UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SHELTERED WINGS, INC. D/B/A VORTEX OPTICS,<br><br>    Plaintiff,<br><br>  v.<br><br>OPTICSANDAMMO, LLC, and CHRISTOPHER DAVID EUSTICE,<br><br>    Defendants. | Case No. 4:20-cv-2304 |

## COMPLAINT

Plaintiff Sheltered Wings, Inc. d/b/a Vortex Optics ("**Vortex**"), by and through the undersigned counsel, hereby alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for infringement of Vortex's federally-registered trademarks under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) and for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), all arising out of Defendants' unauthorized use of Vortex's trademarks on its website in connection with the unlawful and unauthorized sale, or purported sale, of Vortex products.

2. Vortex seeks injunctive and monetary relief.

### JURISDICTION AND VENUE

3. These claims are within the subject matter jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Defendants because they have availed

2

themselves of the laws of the state of Texas by establishing minimum contacts sufficient to provide this Court with jurisdiction over them, including, but not limited to, Defendants committing and continuing to commit acts of infringement in this District by, among other things, offering to sell and selling products that infringe the asserted trademarks.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendants reside within this judicial district, and because a substantial part of the acts giving rise to the claims asserted herein took place and continue to take place in this district.

## THE PARTIES

6. Plaintiff Vortex is a Wisconsin corporation with a principal place of business located at One Vortex Drive, Barneveld, WI 53507-9412.

7. Defendant Christopher David Eustice ("**Defendant Eustice**") is an individual believed to reside at 11823 Boxhill Drive, Houston, Texas 77066-4452. Defendant Eustice owns, operates or assists in the operation of, and does business throughout the United States, including Texas, as the "OpticsandAmmo" online storefront on https://opticsandammo.com. Defendant Eustice may be served at 11823 Boxhill Drive, Houston, Texas 77066-4452, 655 West Forest Drive, Houston, Texas 77079-6915, or wherever he may be found.

8. Defendant Eustice directs, controls, ratifies, participates in, and is the moving force behind the unlawful activity alleged herein. Vortex asserts claims against Defendant Eustice both in his individual capacity and his capacity as corporate officer of OpticsandAmmo.

9. Defendant OpticsandAmmo, LLC ("**Defendant OpticsandAmmo**") a Texas limited liability corporation with a principal place of business located at 655 West Forest Drive, Houston, Texas 77079-6915. Defendant OpticsandAmmo may be served by and through its registered agent, Christopher Davis Eustice, at 655 West Forest Drive, Houston, Texas 77079-

6915 or wherever he may be found.

## FACTUAL BACKGROUND

**A. Vortex's Business and Trademarks.**

10. Since 2002, Vortex has developed a reputation as a leader in developing and creating sporting optics equipment products for hunting, bird watching, wildlife watching, outdoor recreational sports, military and law enforcement, and is well-known for its products, including binoculars, spotting scopes, riflescopes and other optics accessories.

11. Vortex sells its products exclusively through its own store and website, and through a limited network of authorized dealers ("**Authorized Dealers**").

12. Vortex devotes a significant amount of time, energy, and resources toward protecting the value of the Vortex brands, products, names, and reputation throughout the world.

13. By distributing Vortex products exclusively through its Authorized Dealers, Vortex ensures that users of Vortex products receive the high-quality products they expect from Vortex, as well as the customer service and information that only Authorized Dealers can provide. In the highly-competitive market, quality and customer service are a fundamental part of the consumer's decision to purchase a product.

14. To promote and protect the Vortex brand, Vortex has applied for and registered over 100 trademarks with the United States Patent and Trademark Office (collectively, the "**Vortex Trademarks**"). A listing of Applicant's Vortex Trademarks is attached as **Exhibit A.**

15. The registration for each of the Vortex Trademarks is valid, subsisting and in full force and effect.

16. Pursuant to 15 U.S.C. § 1065, the Vortex Trademarks serve as conclusive evidence of the validity of the registered marks as well as Vortex's ownership of the marks and

4

its exclusive right to use and direct the use of the marks in commerce and in connection with the sale and distribution of the Vortex products identified in the registrations, as provided by 15 U.S.C. § 1115(b).

17. Vortex has invested significant resources in developing, promoting, and protecting the goodwill surrounding the Vortex Trademarks and its products.

18. Vortex has actively used, advertised, and marketed high end optical products and other related products in connection with the various Vortex Trademarks in commerce throughout the United States for many years and, in some circumstances, for almost two decades.

19. Since 2003, Vortex has been dedicated to the field of sporting optics equipment for hunting, bird watching, wildlife watching, outdoor recreational sports and law enforcement.

20. Consumers recognize the Vortex Trademarks as being associated with safe and high-quality sporting optics products including red dots, riflescopes, binoculars, non-telescopic sights, spotting scopes, accessories, and apparel.

21. For all of these reasons, the Vortex Trademarks are widely recognized by the general consuming public of the United States and Vortex is recognized as the source of products bearing the Vortex Trademarks.

22. Due to the superior quality and exclusive distribution of Vortex Products, and because Vortex is uniquely recognized as the source of these high-quality products, the Vortex Trademarks have substantial value and goodwill.

**B. Defendants' Unauthorized and Unlawful Activities.**

23. Defendants principal place of business is in Houston, Texas.

24. Defendants operate an online retail store through the www.opticsandammo.com domain name and in connection with the OPTICSANDAMMO brand (the "**OpticsandAmmo**

Website").

25. Through the OpticsandAmmo Website, Defendants offer tactical scopes, hunting scopes, ammunition and other related products.

26. Defendants specifically state that "[w]e ship Optics and other outdoor products worldwide and we ship ammunition to most locations in the United States" in the "About Us" section of the OpticsandAmmo Website.

27. Defendants promote their online business and the OpticsandAmmo Website through various social media outlets, including Facebook, Instagram, Twitter, and YouTube.

28. Defendants do not sell their own products through the OpticsandAmmo Website.

29. Instead, Defendants offer the products and list other companies as "OUR BRANDS." Below is a true and correct screen shot image from Defendants' OpticsandAmmo Website:

   
   
   
   
   

30. Upon information and belief, Defendants began offering the products of others for

sale on the OpticsandAmmo website in 2016.

31. By December 2016, Defendants began offering Vortex products for sale on the OpticsandAmmo website in connection with certain Vortex Trademarks, as well as Vortex product descriptions and images.

32. Defendants currently purportedly offer to sell a number of Vortex products through the OpticsandAmmo Website in connection with the Vortex Trademarks, including (without limitation), Vortex's VULTURE® HD Binoculars, VIPER® HS-T Riflescopes, DEFENDER® Flip Caps, GOLDEN EAGLE® HD Riflescopes, and many more.

33. Defendant offers Vortex's products at a significantly lower price than Vortex or its authorized sellers offer such products.

34. For example, Vortex sells its GOLDEN EAGLE® HD riflescope for $1,899.00.



35. Defendants offer the same purported product for $1,499.99. A true and correct copy of Applicant's product and the product Defendants are selling is attached as **Exhibit B.**



36. On information and belief, Defendants are offering Vortex products at below market rate to divert sales from Vortex and its Authorized Dealers to Defendants.

37. Defendants are also purporting to sell Vortex products that Vortex only distributes in an extremely limited quantity and are not available online or through Vortex's Authorized Distributors ("Limited Distribution Products").

38. Vortex's Limited Distribution Products are available only from Vortex at its physical retail store in Barneveld, Wisconsin.

39. Nonetheless, Defendants are offering to sell Vortex's 15X50 VIPER® HD

Binocular on the OpticsandAmmo Website for $699.99:






40. Defendants also advertise free shipping on all orders, free returns for 60 days, and the lowest prices available with 100% price matching on their website, stating "[w]e guarantee you the lowest prices on all in stock products. All of our products are sold at the Minimum Advertised Prices allowed by the manufacturer. We will match the best price you are able to find on any product as long as it does not violate the Minimum Advertised Price allowed by the Manufacturer."

9



41. Defendants' use of the Vortex Trademarks, product descriptions, and product images is and at all times has been without authorization or approval from Vortex.

42. Defendants are not Authorized Dealers of Vortex products.

43. Despite not being approved as an Authorized Dealer, Defendants have purportedly sold and continue to offer the sale of products bearing the Vortex Trademarks on the OpticsandAmmo Website.

44. Upon information and belief, Defendants complete orders and accept money from customers, but do not actually ship product to customers.

45. Multiple consumers have contacted Vortex regarding negative experiences attempting to purchase Vortex products through Defendants' OpticsandAmmo Website, complaining that Defendants charged them for Vortex products and then never sent the customers the products they ordered.

46. Defendants are engaging in deceptive sales tactics intentionally designed to divert sales from Vortex and Authorized Dealers, even though they have no intention of shipping any Vortex products to their customers.

47. OpticsandAmmo has an "F" rating on the Better Business Bureau website. A true and correct copy of the Better Business Bureau profile for OpticsandAmmo, LLC is attached hereto as **Exhibit C.**

48. More than twenty-six (26) customers submitted complaints to the Better Business Bureau regarding Defendants' business practices. *See* Exhibit C.

49. The common theme in the complaints is that Defendants' offer products as in stock, then never ship them to the customers. When the customers call to request information on order status, they are told the item is not in stock and are offered store credit. Numerous complainants call Defendants "scammers" and "a fraud." *See* Exhibit C.

50. Defendants' unauthorized sale of products bearing the Vortex Trademarks is likely to, and does, create customer confusion because customers who purchase products from Defendants believe they are purchasing genuine Vortex Products when, in fact, they are not.

51. Defendants sale of Limited Distribution Products is likely to create customer confusion because customers who purchase products from Defendants believe they are purchasing genuine Vortex products, when, in fact, they are not because those products are sold exclusively through Vortex's showroom and are not available through even Authorized Dealers.

52. Defendants' unauthorized sale of products bearing the Vortex Trademarks infringes on the Vortex Trademarks and greatly diminishes their value.

53. Defendants' offer of products that Defendant does not actually ship or sell to consumers, significantly harms Vortex's brand and reputation.

54. At the time Defendants commenced the activities complained of herein, Defendants had actual knowledge of Vortex's rights in and to the Vortex Trademarks.

55. Vortex first discovered products bearing the Vortex Trademarks on Defendants' website on or around November 2019.

56. After researching Defendants' activities, on or about January 27, 2020, counsel for Vortex sent Defendants a cease and desist letter, demand that they immediately cease using the Vortex Trademarks and selling products bearing the Vortex Trademarks ("First Demand Letter"). The First Demand Letter advised Defendants that they were infringing on the Vortex

11

Trademarks, and that the infringement was causing customer confusion. A true and correct copy of the First Demand Letter is attached hereto as **Exhibit D**.

57. Defendants did not respond to the First Demand Letter and continued to offer products bearing the Vortex Trademarks on their website.

58. On or about February 5, 2020, counsel for Vortex sent Defendants a second cease and desist letter, demanding that they immediately cease using the Vortex Trademarks and selling products bearing the Vortex Trademarks ("Second Demand Letter"). The letter advised Defendants that they were infringing on the Vortex Trademarks, and that the infringement was causing customer confusion. A true and correct copy of the Second Demand Letter is attached hereto as **Exhibit E**.

59. Defendant Eustice sent an email in response to Vortex's Second Demand Letter. Despite acknowledging that he is selling Vortex products and that he is not an Authorized Dealer, Defendant Eustice denied any infringement, demanded payment of $5,000 and threatened a lawsuit against Vortex. A true and correct copy of Defendant Eustice's email response is attached hereto as **Exhibit F**.

60. Defendants have continued to engage in their unauthorized activities and sale of products bearing the Vortex Trademarks.

61. Defendants have continued to engage in deceptive and unlawful trade practices when offering to sell Vortex products.

62. Defendants' refusal to address its unauthorized use of the Vortex Trademarks and sale of Vortex products, and continued efforts to advertise, offer for sale, and sell Vortex products represent willful and unlawful attempts by Defendants to confuse the public, interfere with Vortex's established business, and unlawfully trade off of Vortex's significant goodwill.

63. The unauthorized sale and offer to sell of products bearing the Vortex Trademarks by Defendants has caused significant harm to Vortex and the Vortex Trademarks.

**FIRST CLAIM FOR RELIEF**
**Trademark Infringement**
**U.S.C. §§ 1114 and 1125(a)(1)(a)**

64. Vortex hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

65. Vortex owns valid and enforceable rights in its Vortex Trademarks.

66. Defendants are using exact replicas of the Vortex Trademarks, Vortex product information and images without authorization on the OpticsandAmmo Website.

67. Defendants' use of the Vortex Trademarks, product descriptions and product images on Defendants' OpticsandAmmo Website is likely to cause and is causing confusion, deception and mistake by creating the false and misleading impression that Defendant OpticsandAmmo is authorized to sell and does sell goods that are manufactured by Vortex, or are associated or connected with Vortex.

68. Defendants actions demonstrate an intentional, willful and malicious intent to trade on the goodwill associated with Vortex and the Vortex Trademarks, causing Vortex and its Authorized Dealers great and irreparable harm.

69. Defendants' unlawful and infringing activities are causing injury to Vortex's goodwill and reputation for which there is no adequate remedy at law.

70. Defendants have caused and continue to cause substantial injury to Vortex, Vortex's Authorized Dealers and the public.

71. Vortex is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116 and 1117.

## SECOND CLAIM FOR RELIEF
### Federal Unfair Competition
### 15 U.S.C. § 1125(a)

72. Vortex hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

73. Defendants' use of the Vortex Trademarks, product descriptions and product images on Defendants' OpticsandAmmo Website is likely to cause and is causing confusion, deception and mistake by creating the false and misleading impression that Defendant OpticsandAmmo is authorized to sell and does sell goods that are manufactured by Vortex, are associated or connected with Vortex, or that Defendants are Authorized Dealers who sell genuine Vortex products.

74. Defendants have made false representations, false descriptions and false designation of origin on or in connection with the goods it sells or offers for sale in violation of 15 U.S.C. § 1125(a).

75. Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and additionally, injury to Vortex's goodwill and reputation for which there is no adequate remedy at law.

76. Defendants' actions demonstrate an intentional, willful and malicious intent to deceive the public, divert business from Vortex and its Authorized Dealers, and trade upon the goodwill associated with Vortex and the Vortex Trademarks.

77. Defendants' actions are causing great and irreparable harm to Vortex, its Authorized Dealers, and the consuming public.

78. Defendants' conduct has caused and is likely to continue causing substantial injury to Vortex, Authorized Dealers and the public. Vortex is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116 and 1117.

## DEMAND FOR JURY TRIAL

79. Vortex hereby demands a trial by jury of all claims pursuant to FED. R. CIV. P. 38.

## PRAYER FOR RELIEF

WHEREFORE, Sheltered Wings, Inc. d/b/a Vortex Optics prays for a judgment as follows:

A. Judgment in favor of Vortex and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, restitution, including disgorgement of profits, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

B. That a permanent injunction be issued enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

i) Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all Vortex Products;

ii) Prohibiting the Enjoined Parties from using any of the Vortex Trademarks in any manner, including on the OpticsandAmmo Website;

iii) Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Vortex products as well as any products bearing any of the Vortex Trademarks;

iv) Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Vortex Trademarks, including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

v) Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of Vortex's products, or any of the Vortex Trademarks;

vi) Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo!, and Bing), to remove from the Internet any of the Vortex Trademarks which associate Vortex's products or the Vortex Trademarks with the Enjoined Parties or the Enjoined Parties' website;

  vii) Requiring the Enjoined Parties to take all action to remove unauthorized Vortex Trademarks from the Internet, including from https://opticsandammo.com;

C. An award of attorneys' fees, costs, and expenses; and

D. Such other and further relief as the Court deems just, equitable and proper.

DATED: June 30, 2020.  Respectfully submitted,

HUSCH BLACKWELL, LLP

By: */s/ Sabrina A. Neff*
Sabrina A. Neff
TBN# 24065813
600 Travis St., Suite 2350
Houston, Texas 77002
(713) 647-6800 – Telephone
(713) 647-6884 – Facsimile
sabrina.neff@huschblackwell.com

ATTORNEYS FOR PLAINTIFF SHELTERED WINGS, INC. D/B/A VORTEX OPTICS